IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANTHONY DERUBEIS and
MACLYN BURNS,

    Plaintiffs

      v.

WITTEN TECHNOLOGIES, INC.,

    Defendant.

CIVIL CASE NO.
1:06-CV-807-JTC

## O R D E R

This matter is currently before the Court on a number of discovery
motions, including Plaintiffs Anthony DeRubeis and Maclyn Burns's motion
to compel and for protective order [#56], Defendant Witten Technologies,
Inc.'s motion to compel [#57], Plaintiffs' motions to quash [#75, #76],
Defendant's motions to take depositions out of time [#77, #80], and
Defendant's motion for extension of time to complete discovery of experts
[#89].  Also pending is Plaintiffs' motion for leave to file third-party complaint
[#60], Defendant's motion to strike [#70], and Plaintiffs' motion for leave to
file excess pages [#71].

## I.    Background

Defendant Witten Technologies, Inc. is a Florida-based company in the
underground mapping and imaging industry.  Witten's flagship product is the
Computer Assisted Radar Tomography Imaging System ("the CART System"

or "CART"), which uses ground penetrating radar and sophisticated software to find, identify, and create complex 3-D images of buried objects. The CART System is used, for example, by public utilities prior to digging in order to identify obstructions and therefore prevent the breaking of gas or water lines, etc.

Plaintiffs Anthony DeRubeis and Maclyn Burns were employed at Witten from 2000 to 2003. Plaintiffs began as engineers and were involved in the development of the CART System. Initially, they were part of a field crew that worked out logistical issues between the hardware and software components of the CART System. As a result of their involvement, Plaintiffs were included on a number of Witten patents directed to the CART System. In addition, DeRubeis and Witten were eventually promoted to Vice President of Operations and Vice President of Sales, respectively.

In 2003, due to a continuing dispute between Witten and Plaintiffs, Plaintiffs' employment with Witten terminated.[1] In 2004, Plaintiffs brought the instant action in Massachusetts state court for breach of employment agreement. Witten removed the action to the U.S. District Court for the District of Massachusetts and counterclaimed for misappropriation of trade secrets. In a nutshell, Witten claims that Plaintiffs are using its trade secrets

---

[1] The nature of Plaintiffs' termination is in dispute.

to compete in the industry.  On March 30, 2006, the district court in Massachusetts transferred the case to this Court pursuant to 28 U.S.C. § 1404.

Pending before the Court are a number of motions related to discovery on Witten's misappropriation of trade secrets claim.

## II.    Legal Standard for Discovery

Generally speaking, parties are entitled to discovery regarding any non-privileged matter that is relevant to any claim or defense.  Fed. R. Civ. P. 26(b)(1).  Under Rule 26, however, the Court has broad discretion to limit the time, place, and manner of discovery as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  The Court also has broad discretion to modify the timing and sequence of discovery "for the convenience of the parties and witnesses and in the interests of justice . . . ."  Fed. R. Civ. P. 26(d); cf. Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 1597 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").  The Court's exercise of discretion to appropriately fashion the scope and effect of discovery will be sustained unless it abuses that discretion to the prejudice of a party.  Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1505 (11th Cir. 1985); see also Moore v.

Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991) ("The trial court . . .
has wide discretion in setting the limits of discovery, and its decisions will not
be reversed unless a clearly erroneous principle of law is applied, or no
evidence rationally supports the decision.").

## III.   Discussion

### A.    Plaintiffs' motion to compel and for protective order [#56]; Defendant's motion to compel [#57]

Defendant Witten seeks to compel Plaintiffs DeRubeis and Burns to
respond to outstanding discovery related to Plaintiffs' trade secrets.[2]
Plaintiffs seek to compel Witten to further elaborate on a prior discovery
request, namely, that Witten identify its trade secrets at issue in this case
with particularity.  Plaintiffs also seek a protective order that would delay
their obligation to respond to Witten's discovery requests until Witten has
first described its alleged trade secrets with particularity.  The question
presented by these motions is to what extent Defendant Witten (as the trade
secret plaintiff) is required to identify the trade secrets allegedly
misappropriated before Plaintiffs DeRubeis and Burns (as the trade secret

---

[2] At issue are Witten's document requests and interrogatories directed to,
inter alia: (1) customer lists of Virtual Underground, Plaintiffs' newly-formed
company; (2) the "trade secrets, forumlae, process[es] [and] techniques" used by
Virtual Underground in providing subsurfacing imaging services; (3) all documents
related to the advertising, marketing, or promotion of Virtual Underground's
services.  (Pls.' Mot. to Compel at 1-2.)

4

defendants) are obligated to provide discovery on that issue.

On March 16, 2006, Plaintiffs requested discovery related to Witten's misappropriation of trade secrets claim.  In particular, Interrogatory No. 1 stated: "Please identify with particularity each trade secret or item of confidential or proprietary information that you contend was misappropriated by Plaintiffs."  The extent of Witten's response to date is as follows:

· Software developed, owned and/or licensed to [Witten] that it uses to create its final deliverables from the raw positioning and radar data collected from a radar array positioning system, such as a "total station" or Global Positioning System.

· Data processing algorithms developed, owned, and/or licensed to [Witten], which it uses to merge the positioning data with the radar array data.

· Software and processes developed, owned, and/or licensed to [Witten] regarding channel equalization filters, data adaptive filters and the use of filters that operate on channels, frames, or trace time series.

· Processes for the use of MATLAB software in data processing or interpretation steps of radar array data.

· Software developed, owned and/or licensed to [Witten] used to create its final deliverables that is transferred from interpretation of processed radar array data into CADD or similar drawings.

(Pls.' Mot. to Compel, Ex. 9.)

As is evident from Witten's response, this disclosure does not specify any trade secrets at all, but rather reveals the end results of, or the functions

performed by, the claimed trade secrets.  Accordingly, Plaintiffs request the Court compel Defendant Witten to amend its response so that its trade secrets are identified with sufficient particularity.  Furthermore, it argues that it should not be required to provide any of its own trade secret information until Defendant Witten sufficiently identifies the trade secrets allegedly misappropriated.

* * *

Trade secret cases present unique and difficult problems with respect to the timing and scope of discovery.  See generally Kevin R. Casey, Identification of Trade Secrets during Discovery: Timing and Specificity, 24 AIPLA Q.J. 191, 195 (1996) (addressing "[w]hen . . . a plaintiff . . . who alleges misappropriation of trade secrets . . . [must] specifically identify those trade secrets before obtaining discovery from the defendant.").  This case presents a typical situation.[3]  Plaintiffs DeRubeis and Burns, former employees of Defendant Witten, helped to develop at least some of the software and processes by which Witten provides its underground mapping services.  Now that Plaintiffs have left Witten and are competing in the same industry, Witten believes that they are doing so by use of Witten's secret technology.

---

[3] Another common situation occurs, for example, when two entities unsuccessfully attempt to merge and, during the course of their due diligence, each learns of the other's trade secrets.  Casey, supra, at 193-94.

Accordingly, Witten filed a counterclaim for misappropriation of trade secrets and seeks discovery on precisely what technologies Plaintiffs are using to perform the same underground mapping services.  Unsurprisingly, Plaintiffs contend they are not using Witten's trade secrets to compete and oppose such discovery until Witten has identified with sufficient detail what trade secrets it alleges are at issue.

This discovery impasse is not uncommon in trade secret cases, and brings into conflict many competing policies.  For example, courts have identified at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets.  First, courts have highlighted a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure.  Casey, supra, at 197-99; see Fed. R. Civ. P. 26(b)(1).  Second, the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating.  Casey, supra, at 199-201; cf. id. at 201 ("[The plaintiff's] need is acute because, before discovery, it is relying entirely upon circumstantial evidence to support its case.") (footnote omitted).  Finally, if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is

7

placed in somewhat of a "Catch-22":

> Satisfying the requirement of detailed disclosure of the trade
> secrets without knowledge [of] what the defendant is doing can be
> very difficult.  If the list is too general, it will encompass material
> that the defendant will be able to show cannot be trade secret.  If
> instead it is too specific, it may miss what the defendant is doing.

Id. at 202 (quoting Lynn H. Pasahow, Patent and Trade Secret Biotechnology

Litigation, 1993 Biotechnology: Business, Law, and Regulation 37, 52 (ALI-

ABA Course Study Materials)).

In contrast, courts have identified at least four policies which support

delaying trade secret discovery until the trade secret plaintiff has sufficiently

described the trade secrets at issue.  First, if discovery on the defendant's

trade secrets were automatically permitted, lawsuits might regularly be filed

as "fishing expeditions" to discover the trade secrets of a competitor.  Id. at

204-06.  As put by the District Court for the Southern District of New York,

> [T]he circumstance that a litigant in his complaint alleges that he
> disclosed confidential and secret processes to a defendant, which
> the latter in turn denies, does not automatically entitle the
> plaintiff to obtain disclosure of the alleged offending processes in
> aid of plaintiff's pretrial discovery – otherwise it would be a
> simple matter to obtain one's trade secret by the mere assertion
> of a claim.  The end result of disclosure, where ultimately it
> develops that the asserted claim is without substance, may be so
> destructive of the interests of the prevailing party that more is
> required than mere allegation to warrant pretrial disclosure.

Ray v. Allied Chem. Corp., 34 F.R.D. 456, 457 (S.D.N.Y. 1964).  Second, until

the trade secret plaintiff has identified the secrets at issue with some

8

specificity, there is no way to know whether the information sought is relevant:

> [A] defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are. . . . Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not . . . .

Xerox Corp. v. IBM Corp., 64 F.R.D. 367, 371 (S.D.N.Y. 1974); see also Casey, supra, at 206-11.  Thus, requiring the plaintiff to sufficiently identify its trade secrets prior to allowing discovery on the defendant's trade secrets helps the court to determine the outer permissible bounds of discovery and prevents needless exposure of the defendant's trade secrets.

Third, it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated.  Casey, supra, at 211-12.  Often, a trade secret defendant will defend the claim by showing that it does not use the claimed secret or that the information is in fact not secret.  See Litton Sys., Inc. v. Sundstrand Corp., 750 F.2d 952, 954 (Fed. Cir. 1984).  Until the defendant knows what information is at issue, it cannot attempt to rebut the plaintiff's charges of misappropriation.  Finally, requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives.  Casey, supra, at 210-11; see also

Jerome Doyle & Allen S. Joslyn, <u>The Role of Counsel in Litigation Involving Technologically Complex Trade Secrets</u>, 6 B.C. Indus. & Comm. L. Rev. 743, 747 (1965) ("If plaintiff is not forced to define his alleged disclosures before he gets into defendant's files, he may simply claim whatever he finds there.").

These competing policies can make resolving this type of dispute difficult.  Indeed, courts have developed at least nine different approaches to the problem. Casey, <u>supra</u>, at 212-41 (discussing approaches); <u>id.</u> at 212 ("Although the issue is relatively common, a standard solution is not.  Courts have resolved the issue in a variety of ways along a broad continuum."). Some courts, for example, have bifurcated discovery so that discovery of non-confidential information takes place first and then required the trade secret plaintiff to establish a factual basis for its claim before it was entitled to discover the defendant's confidential documents.  <u>Cf.</u> <u>Microwave Research Corp. v. Sanders Assocs., Inc.</u>, 110 F.R.D. 669, 672 (D. Mass. 1986) ("[B]efore a plaintiff is entitled to . . . broad discovery into a defendant's trade secrets, it must show that other evidence which it has gathered through discovery provides a substantial factual basis for its claim.").  Other courts have ordered simultaneous discovery of trade secret information. <u>E.g.</u>, <u>Cataphote Corp. v. Hudson</u>, 316 F. Supp. 1122 (S.D. Miss. 1970).  Unfortunately, there is no talismanic procedure the Court may apply in order to obtain the best

result in any given case.  The approach taken in <u>Microwave Research</u> may have been perfectly appropriate in that case but may be inappropriate in this one.  In other words, "the 'proper' approach is clearly fact-dependent."  Casey, <u>supra</u>, at 241.

To find the right approach in this case, the Court must balance the above-referenced policy considerations.  <u>See</u> <u>Microwave Research</u>, 110 F.R.D. at 672 (" In cases involving the disclosure of confidential information and/or trade secrets, the Court must strike a balance.").  Weighing the various considerations, the Court finds that it is appropriate in this case to require Witten to first identify with "reasonable particularity" those trade secrets it believes to be at issue.  The Court defines "reasonable particularity" to mean that Witten must provide Plaintiffs DeRubeis and Burns with a sufficient description of the trade secrets it believes to be at issue in this case so that: (1) Plaintiffs are put on notice of the nature of Witten's claims; and (2) Plaintiffs can discern the relevancy of any requested discovery on Plaintiffs' trade secrets.[4]  Once Witten has fulfilled its obligation, it will be entitled to

---

[4] Given the course of this litigation so far, the Court foresees a dispute arising between the parties regarding whether Witten's disclosure is sufficiently reasonably particular.  The Court, however, will not look favorably upon a motion in this regard.  Should a motion be filed, each party is directed to describe its position on what discovery information would constitute a reasonably particular disclosure. The Court will adopt without modification the position of the party it considers more reasonable.

discovery on Plaintiffs' trade secrets, provided that what it seeks is relevant.

This procedure is appropriate for a number of reasons. First, it appears from the record that Witten is reasonably aware of the trade secrets that are at issue in this case. Thus, this approach will not require Witten to list thousands of trade secrets in order to ensure that its disclosure sufficiently covers the range of trade secrets that might eventually arise. Cf. Data Gen. Corp. v. SC. SYS., Inc., 1978 WL 22033, at *1 (Del. Ch. Nov. 27, 1978) ("In answer to the 'each and every' trade secret, etc., requested by SC, Data General has set forth over 41 pages some 1,120 separate entries . . . ."). Second, because Witten must only describe the purported trade secrets with "reasonable particularity," it will avoid the "Catch 22" dilemma discussed above. Third, this approach will prevent the needless disclosure of Plaintiffs' confidential information in the event that Witten is engaged in a fishing expedition or retaliating against Plaintiffs for filing this lawsuit for breach of employment contract.

Fourth, it places appropriate bounds on trade secret discovery and prevents unnecessary disclosure of Plaintiffs' trade secrets not at issue. By way of example, Witten seeks confidential customer and marketing information from Plaintiffs. However, in its preliminary identification of the trade secrets allegedly misappropriated, it did not list customer or marketing

12

information.  If Witten does not contend that its customer lists and marketing information constitute a trade secret which Plaintiffs have misappropriated, its request for Plaintiffs' information on the subject would likely be inappropriate.  Fifth, requiring Witten to reasonably identify the trade secrets at issue will allow Plaintiffs to begin to mount a defense to the misappropriation charges.  Finally, a protective order is in effect in this case which allows the parties to limit confidential information to attorneys' eyes only.  Therefore, Witten's identification of its trade secrets should not risk the information's confidentiality.

For these reasons, Plaintiffs' motion to compel and for protective order [#56] is **GRANTED**.  Defendant's motion to compel [#57] is **DENIED with leave to renew**.

> B.    Plaintiffs' motions to quash [#75, #76]; Defendant's motions to take depositions out of time [#77, #80]; Defendant's motion for extension of discovery [#89]

In view of the Court's ruling on Plaintiffs' motion to compel, discovery will be reopened for a limited period for trade secret discovery to proceed.  See infra Section IV.  Given the posture of this case, the Court **DENIES** these motions [#75, #76, #77, #80, #89] **with leave to renew**.

> C.    Plaintiffs' motion for leave to file third-party complaint [#60]

Plaintiffs DeRubeis and Burns, who by virtue of Witten's counterclaim

13

are trade secret defendants, seek permission to file a third-party complaint pursuant to Rule 14(b) against Geophysical Survey Systems, Inc. ("GSS") for indemnity and contribution. The counterclaim at issue alleges that Plaintiffs DeRubeis and Burns misappropriated Witten's trade secret information, at least in part, to disclose to GSS. (Counterclaim ¶ 22.) Because Burns and DeRubeis are now licensees of certain technology owned by GSS, they argue they are entitled to seek contribution and indemnity from GSS pursuant to their license agreement in the event that Witten prevails on its trade secret misappropriation claim.

Rule 14 permits a party to assert a claim against anyone who is not a party to the original action if the non-party's liability is in some way dependent upon the outcome of the original action. Fed. R. Civ. P. 14(a),(b); see Price v. CTB, Inc., 168 F. Supp. 2d 1299, 1301 (M.D. Ala. 2001). "[W]hether a third-party defendant may be impleaded under Rule 14 [is] a question addressed to the sound discretion of the trial court." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1443 (2d ed. 1990). Factors appropriately considered in deciding such a motion include: (1) whether the movant unreasonably delayed in bringing the motion; (2) whether impleading the new party would delay or unduly complicate the action; (3) whether impleading the new party would prejudice

14

the new or the non-moving party; and (4) the merit of the underlying claim.

See generally id.

The Court exercises its discretion to deny the impleader of GSS. First, the motion is untimely. Witten filed its counterclaim for trade secret misappropriation almost three years ago. That pleading contained more than enough information to put Plaintiffs on notice of any indemnity or contribution claim they might have against GSS. Yet, they waited until this late hour to request relief, and have failed to show good cause for the delay. Second, permitting the impleader of GSS would unnecessarily complicate the issues in this case as well as delay their resolution. As can be seen from a cursory review of the docket, this case has not been a model of speedy and efficient litigation. Adding another party to the lawsuit will only increase the opportunity for excessive motions practice and overly-litigious conduct to proliferate. Moreover, this case, including the time it spent in the District of Massachusetts, is almost three years old. There is no question that adding GSS would further delay these proceedings, and the Court declines to do so. Third, allowing Plaintiffs to implead GSS would expand the scope of, and create more uncertainty in, an already contentious discovery process. It is unclear what discovery, in addition to the trade secret discovery, would need to be taken if GSS were impleaded, but the Court declines to take the

opportunity to find out.  Finally, any legitimate claim Plaintiffs may have against GSS is amply protected by their right to bring an independent action.

For these reasons, Plaintiffs' motion for leave to file third-party complaint [#60] is **DENIED**.

> D.    Defendant's motion to strike [#70]; Plaintiffs' motion for leave to file excess pages [#71]

Plaintiffs' motion for leave to file excess pages [#71] is **GRANTED**. Accordingly, Defendant's motion to strike [#70] is **DENIED as moot**.

## IV.    Scheduling

The Court will reopen discovery for a limited period of time in order to allow the parties to complete discovery on Witten's claim of misappropriation of trade secrets.  The parties are **DIRECTED** to submit a joint proposed scheduling order within ten (10) days of entry of this Order.  The proposed scheduling order should set forth in detail the nature and duration of discovery requested.

## V.    Conclusion

Plaintiffs Anthony DeRubeis and Maclyn Burns's motion to compel and for protective order [#56] is **GRANTED**.  Defendant Witten Technologies, Inc.'s motion to compel [#57] is **DENIED with leave to renew**.  Plaintiffs' motions to quash [#75, #76], Defendant's motions to take depositions out of time [#77, #80], and Defendant's motion for extension of time to complete

16

discovery of experts [#89] are **DENIED with leave to renew**.  Plaintiffs'

motion for leave to file third-party complaint is **DENIED**.  Plaintiffs' motion

for leave to file excess pages [#71] is **GRANTED**.  Defendant's motion to

strike [#70] is **DENIED as moot**.

      **SO ORDERED**, this 20th day of April, 2007.

                                _____

                                JACK T. CAMP
                                UNITED STATES DISTRICT JUDGE